IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MILLIE V. KISER,
      Plaintiff,

vs.                                  Case No. 5:05cv194/SPM/EMT

JO  ANNE  B.  BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI).

      Upon review of the record, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; therefore, the decision of the Commissioner should be reversed and remanded.

I.      PROCEDURAL HISTORY

      This suit involves two applications made under the Social Security Act.  The first is an application for DIB under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* (Tr. 57–60).[1]  The second is an application for SSI based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (Tr.

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on January 3, 2006 (Doc. 11).

294–96).[2]  Plaintiff's applications were denied initially (Tr. 29–31, 297–99) and on reconsideration (Tr. 36–38, 301–04).  On November 18, 2004, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 14–21).  On August 5, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–7).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, and therefore subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.    FINDINGS OF THE ALJ

On November 18, 2004, the ALJ made several findings relative to the issues raised in this appeal (Tr. 14–21):

1)    Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(I) of the Act and is insured for benefits through September 30, 2004.

2)    Plaintiff has not engaged in substantial gainful activity since April 1, 2001, the alleged onset of disability.

3)    Plaintiff's foot pain, left hand numbness, hip pain, and migraine headaches are considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(c) and 416.920(b)).[3]

4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)    Plaintiff's allegations regarding her limitations are not totally credible.

6)    Plaintiff has the residual functional capacity (RFC) to perform "light" work.

---

[2]In each application Plaintiff alleged an onset of disability on April 1, 2001 (*see* Tr. 57, 294).

[3]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404 and 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

7)      Plaintiff is able to perform her past relevant work as a presser, cashier, janitor,[4] and companion (20 C.F.R. § 404.1565).

8)      Plaintiff is of "advanced age" (55 and over) (*see* 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(2)(d)).

9)      Plaintiff has a high school education (20 C.F.R. § 404.1564).

10)     Plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue (20 C.F.R. § 404.1568).

11)     Plaintiff has the RFC to perform substantially all of the full range of light work (20 C.F.R. § 404.1567).

12)     Based on an exertional capacity for light work, and Plaintiff's age, education, and work experience, Medical-Vocational Rule 202.14, Appendix 2, Subpart P, Regulation No. 4, directs a conclusion of "not disabled."

13)     Plaintiff's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations; thus, Plaintiff is not disabled.

14)     Plaintiff was not under a "disability," as defined in the Act, at any time through the date of the ALJ's decision (20 C.F.R. § 404.1520(g)).

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997);  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with

---

[4]In the body of the ALJ's decision, he referred to Plaintiff's past work as a "janitor" (*see* Tr. 18), but in the summary of his opinion, he referred to this past work as a "maid" (*see* Tr. 20).  The record establishes that Plaintiff's past work is properly characterized as janitorial (*see, e.g.*, Tr. 82).  Moreover, the vocational expert was specifically questioned about "janitorial" work (*see* Tr. 322).  Thus, in this report and recommendation, the court will refer to Plaintiff's past work as a "janitor" instead of a "maid."

or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve

months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

       4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

       5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

    A.    Personal History

Plaintiff testified at her hearing before the ALJ on September 23, 2004 as follows.  She was fifty-nine years old at the time of her hearing, but she would be turning sixty on October 20, 2004 (Tr. 305, 308).  She completed the twelfth grade and has no vocational training (Tr. 308–09).  She last worked in August 2000 as a "sitter" at a nursing facility, where she sat with an elderly lady (Tr. 309).  Prior to that she worked as a cashier, office cleaner, and "presser, sorter, and bagge[r]" for a dry-cleaning business (Tr. 309, 319).  Plaintiff indicated that she was presently working for her mother on occasion, helping her with laundry, vacuuming, or whatever else she (Plaintiff) wants to do, taking her time to do so, and having to "sit down" (Tr. 310).  Plaintiff does her own household chores (Tr. 318).  She stated that she can vacuum one day and dust the next day, "however [she] want[s] to do it" (id.).

Plaintiff stated that she was presently being treated for high blood pressure and acid reflux (Tr. 311).  She added that she has migraines, which cause nausea and vomiting (Tr. 318).  She also has "low thyroid" and was prescribed medication for the thyroid condition, but it made her start

"gaining weight like crazy" (Tr. 311, 313).  She also described problems with her feet, indicating that she has spurs and some sort of a disfigurement (Tr. 311).  Her feet cause pain and she can't "stay on them too long at a time" (*id.*).  She also has problems with her hands, including numbness and pain, with worse pain in her left hand (Tr. 312).  She was told that she may have to have surgery, but she stopped seeing a specialist due to lack of funds (*id.*).  She has difficulty sleeping at night and wakes up when her hands become numb (Tr. 313).

Plaintiff stated that when she was forty years old, she fell on a concrete floor and fractured her hip (Tr. 311).  As a result, she had three pins inserted in her hip, but she continues to experience problems, stating that "sometimes [she] can't sit too long or stand," and she cannot sleep on one side (Tr. 311–12).  She also reported that physicians from the health department told her that she might have to have the pins removed and replaced (Tr. 312).  She can sit for about thirty minutes to an hour before she has to get up (Tr. 314).  If she sits for too long, her hip and knees begin to hurt (*id.*).  She can stand for only ten to fifteen minutes, but if she is walking she can stand for about an hour or so (*id.*).  She reported that if she walks during the day, she will suffer at night and can hardly get up to move or walk (*id.*).  Finally, Plaintiff reported experiencing migraines every day for the six to eight months preceding the hearing (Tr. 313).  In conclusion, Plaintiff testified that her main problems are standing due to pain and headaches that are "sometimes" accompanied by nausea and vomiting (Tr. 318).[5]

B.      Relevant Medical History

Plaintiff was a patient of J. Carlos Cortes, M.D., from February through May of 1998.  He treated her for sinusitis, hypertension, carpal tunnel and migraine headaches, and he described his treatment of Plaintiff as "conservative management" (Tr. 140–43).

The file contains "Progress Notes" and records from the Jackson County Health Department from May 2000 to October 2002 (Tr. 162–75), September 2001 to May 2004 (Tr. 250–64), and July 2000 to August 2004, some of which appear to be duplicative (Tr. 269–83).  The records reflect,

---

[5]In one of Plaintiff's Disability Reports, which is not dated, she stated that the main problems that keep her from working are her "right foot heel and left hip" and/or her "left hip and [her] right heel and ankle" (Tr. 71, 81).  She also indicated that she takes medications for high blood pressure, hormone therapy, low thyroid, and arthritis (Tr. 76, 86).  In another Disability Report dated April 30, 1998, Plaintiff indicated that her disabling condition was "pins in hip — surgery.  Carpal tunnel, HBP, Migraines.  Can't stand for long periods or even sit for long periods." (Tr. 90).

generally, that Plaintiff was treated for various ailments, including hypertension,[6] migraine headaches, neck pain, hip pain, chest pain, right foot pain, and thyroditis (*see, e.g.*, Tr. 164–65, 169, 172).  A physical examination on July 19, 2000, revealed normal deep tendon reflexes, no sensory loss, no weakness, a normal grip, and no evidence of weakness or numbness in her hands (Tr. 170).  Plaintiff had "some tenderness or increased pain when you press her down and feels relief" when her head was pulled up (*id.*).  The physician recommended "conservative management," but if there was no improvement, a CT scan should be considered (Tr. 170).  In January 2002, an x-ray of Plaintiff's right foot was recommended (Tr. 163).

Plaintiff was often seen by Julian Giraldo, M.D., when she sought treatment at the Jackson County Health Department.  In March 2003, he completed a Physical Capacity Evaluation form, in which he found that Plaintiff could stand, walk, or sit six hours in an eight-hour workday; that she could frequently lift up to ten pounds; that she could use her hands for repetitive grasping, pushing, pulling, and fine manipulation; that she could use her feet for repetitive movements, such as operating foot controls; and that she could occasionally bend, squat, crawl, and climb (Tr. 265–66).  Additionally, Dr. Giraldo completed a Sedentary Requirements Checklist, wherein he found, essentially, that Plaintiff had no restrictions that would prevent her from performing "basic work activity" and that she could "be expected to attend any employment on an eight (8) hour/5 days a week basis" (Tr. 266).  However, Dr. Giraldo acknowledged that he rendered these opinions without considering Plaintiff's heel spur syndrome and stress fracture and noted the following: "refer back to Dr. Feitz" (Tr. 267).[7]

---

[6]The medical evidence suggests that Plaintiff's hypertension has been well controlled (*see, e.g.,* Tr. 257–58).

[7]As discussed below, Dr. Feitz's records note that x-rays revealed that Plaintiff's stress fracture was healing (*see* Tr. 209).  Moreover, prior to rendering his opinions, Dr. Giraldo was generally aware of Plaintiff's problems with her right foot.  For example, in September 2001, Plaintiff presented to Dr. Giraldo with complaints of pain in the left hip and right heel (Tr. 263).  On physical examination, Plaintiff had marked tenderness to palpation on the bottom of her right heel, worse when she got up and walked on it.  The clinical assessment was osteoarthritis of the left hip and probable tendonitis of the right heel (*id.*).  Plaintiff again reported right heel pain in October 2001, after which Dr. Giraldo indicated that Plaintiff had "possible heel spur" (*id.*), and in January 2002, Plaintiff reported to Dr. Giraldo that pain in her right foot was so severe it kept her awake at night (Tr. 261).  Dr. Giraldo noted on January 22, 2002, that Plaintiff's x-ray report "shows some developmental irregularities, hammertoes, [and] Calcaneal spurs" (Tr. 260).

Plaintiff presented to the Jackson Hospital Emergency Room on several occasions between 1998 and 2002 (Tr. 176–200). Although some of the records are not entirely legible, it appears that Plaintiff's diagnoses included early emphysema; unexplained cough; foot pain resulting from developmental irregularities, hammertoe, and calcaneal spurs; migraines; and possible COPD (Tr. 179, 192, 199, 200). She also presented to the Charlotte Regional Medical Center during the same time frame complaining of headaches *(see, e.g.*, Tr. 220, 226). Additionally, on January 29, 2004, Plaintiff was seen at the Charlotte Regional Medical Center emergency room with complaints of headache, nausea, and neck pain that radiated down into her right arm and fingers, with numbness in the right arm. The clinical impression was headache and cervical radicuolpathy, although Plaintiff's arm pain was gone and her condition was "improved" upon Plaintiff's discharge the same day (Tr. 234–49).

In February 2002, Plaintiff was seen at the Feitz Foot Clinic. She was diagnosed with "heel spur syndrome, right." X-rays revealed a healing stress fracture, 3rd metatarsal, right foot. Plaintiff was given a Cortisone shot and placed in a cast. One month later Plaintiff returned, complaining of arch pain. On physical examination she had pain with compression in the planar medial aspect, right heel. Plaintiff was given medication for pain and released from further treatment (Tr. 209).

In December 2003, Plaintiff was seen by Dev Narayan, M.D., with complaints of rectal bleeding. Plaintiff's physical examination was normal. The clinical impression was recent rectal bleeding, recent flu-like symptoms, hypertension over the past thirty-six years, history of migraine, hypokalemia with potassium 3.3, atrial and ventricular ectopies, and left bundle-branch block on electrocardiogram (Tr. 210–14).

C.      Other Information Within Plaintiff's Claim File

A Physical RFC Assessment form was completed by a medical consultant on June 26, 1998 (Tr. 144–51). The consultant concluded that Plaintiff could occasionally[8] lift and/or carry (including upward pulling) twenty pounds, frequently[9] lift and/or carry (including upward pulling) ten pounds, and stand and/or walk and/or sit (with normal breaks) for about six hours in an eight-hour workday.

---

[8]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous).

[9]"Frequently" means occurring 1/3rd to 2/3$^{rds}$ of an an 8-hour workday (cumulative, not continuous).

The consultant based these opinions, in part, on the fact that Plaintiff had received only "conservative therapy"; she had non-severe hypertension; her activities of daily living included cooking, cleaning, shopping, and laundry; and, although she had headaches, they did not last long and were not a "disabling impairment" (Tr. 145–46).   The consultant further found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 146–48). A second assessment was completed in January 2001 by David Guttman, M.D. (Tr. 152–59).  Dr. Guttman found Plaintiff able to occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, and stand and/or walk and/or sit for about six hours in an eight-hour workday.  Like the first consultant, he found no other limitations (*see* Tr. 154–56).  Finally, a third assessment was completed by Tom C. Peele, M.D., on April 22, 2002 (Tr. 201–08).  Dr. Peele reached the same conclusions as Dr. Guttman, except for finding that Plaintiff should avoid concentrated exposure to hazards such as machinery or heights (Tr. 205).  His opinions were based, in part, on the fact that Plaintiff's foot pain was caused by heel spurs and the fact that she had full range of motion in all joints, including her hip (Tr. 202).

Finally, Plaintiff was referred by the Office Disability Determination for a physical consultative examination.  The evaluation was conducted by Iqbal Faruqui, M.D., on November 1, 2001 (Tr. 160).  Plaintiff complained of left hip pain and right foot pain "for a long time."  Plaintiff's physical examination was essentially normal.  Her blood pressure was elevated at 171/94.  She had full range of motion, including the left hip and right ankle.  No wrist restrictions or limitations were noted.  Additionally, Plaintiff  had no limitations in her ability to finely manipulate with her hands, or to push, pull or grasp with her hands.  Although Plaintiff had a left-sided limp, she was able to walk without assistance and was able to sit, stand, walk, and climb up on and off of the examination table.  The clinical assessment was left hip pain, status post hip injury seventeen years ago, and right ankle and heel pain (Tr. 160–61).

V.    DISCUSSION

Plaintiff raises four issues on appeal.  She contends that the ALJ erred: 1) in finding that Plaintiff could return to her past work, 2) in relying on the wrong Medical-Vocational Rule in his alternate step five finding, 3) in finding that Plaintiff had no non-exertional limitations, and 4) in making a credibility determination (Doc. 17 at 8).

A.      Plaintiff's Past Relevant Work

At step four of the disability analysis, the ALJ found that Plaintiff could return to her past relevant work as a presser, cashier, janitor, and companion (Tr. 18).[10] Plaintiff asserts that ALJ erred in his findings as to each job.  Regarding the job of presser, Plaintiff states that the ALJ erred because he determined that Plaintiff was capable of performing at most light work, but the job of presser is classified as medium work (*see* Tr. 18, 321; Doc. 17 at 10).  Regarding the job of "maid and companion," Plaintiff asserts that she did not hold the job long enough for it to constitute "past relevant work," and further, that the job of "maid and companion" is properly classified as medium work (Doc. 17 at 11–12).  Finally, Plaintiff contends that the ALJ erred in finding her capable of returning to her job as a cashier, even though it is light work and is properly characterized as "past relevant work," because the ALJ failed to incorporate Plaintiff's severe impairments into the RFC determination and failed to compare the explicit demands of the cashier job with Plaintiff's RFC (*id.* at 13–14).

Plaintiff is correct in her assertion that the job of presser is classified as medium work (*see* Tr. 18), and Defendant does not dispute the point.  Thus, because the ALJ found Plaintiff capable of performing at most light work (*see* Tr. 20), Plaintiff could not return to work as a presser, and the ALJ erred in so finding.

Plaintiff next asserts that the ALJ erred in his findings regarding her past work as a "maid and companion."  The court notes, however, that the ALJ did not characterize the past work at issue as "maid and companion."  The ALJ found that Plaintiff had past relevant work as a janitor, which is medium work, and as a companion, which is light work with a specific vocational preparation (SVP) of 3 (*see* Tr. 18).  Plaintiff could not perform work as a janitor because it is medium work, and the ALJ erred in so finding.  Thus, the court must consider whether the ALJ erred in his findings regarding Plaintiff's ability to return to her past work as a companion and as a cashier.

"Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. §

---

[10]The ALJ made an alternate finding at step five, that even if Plaintiff could <u>not</u> return to her past relevant work, there were jobs available in the economy that she could perform (*see* Tr. 18).

404.1560(b)(1).   Regarding the job of companion, Plaintiff testified that she worked for Neighborhood Nursing Company, that she last worked there in August 2000, and she described her work duties as follows: "I sit - - I was like a sitter.  I sit [and walk] with a elderly lady in a nursing facility" (Tr. 309; *see also* Tr. 117).  Plaintiff further indicated that the job ended when the lady's son "came and got her," and the nursing home had no additional work available at that time (Tr. 309).  The ALJ then asked Plaintiff if she had later attempted to go back to that job, and Plaintiff responded that she had "put in for places," but no one had ever called her back (Tr. 310).  The record does not conclusively establish how long Plaintiff held this job.  Although Plaintiff testified that she last worked there in August 2000, she indicated on two work history reports that she held the job from "8/00 to 9/00," and she told Dr. Faruqui that she worked as a sitter in November and December 2000 (Tr. 82, 116, 161).  On two disability reports she indicated that she held the job for only ten days, and on one of those reports, she described the job as "part time" (Tr. 72, 138).  Plaintiff also noted that she worked 12-hour days (*see* Tr. 82, 116–17).  Additionally, although portions of Plaintiff's hearing before the ALJ are inaudible, the vocational expert (VE) appears to conclude that Plaintiff held the job for two months, and neither Plaintiff nor her attorney objected to this conclusion; indeed, immediately after the ALJ said "two months," referring to the job, Plaintiff responded, "yeah, it wasn't much" (*see* Tr. 322).

The VE testified that the job of companion has an SVP of 3 (Tr. 322), which requires "[o]ver 1 month and up to and including 3 months" to learn job duties *(see* <u>Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles</u>, Appendix B-1, U.S. Dep't. of Labor (1981); *see also* Doc. 17, Ex. A).  Although the record is inconsistent, it contains sufficient evidence to support the conclusion that Plaintiff held this employment for at least one month, especially considering that Plaintiff worked 12-hour days.  Moreover, Plaintiff described very simple work duties and responsibilities (that is, sitting or walking with an elderly lady) that could clearly be learned during the time she has admitted to working at the nursing home.  The job duties were simple, and Plaintiff has a high school education.  Thus, this court concludes that the ALJ did not err in finding that Plaintiff's past work as a companion was "past relevant work."

Plaintiff further contends, however, that the ALJ mischaracterized this work as light.  In support of her contention, Plaintiff relies in part upon inaudible portions of the transcript, and again

combines the jobs of "maid and companion" into one, although Plaintiff held the jobs separately, and the ALJ addressed the jobs separately as "janitor" and "companion," concluding only that the job of janitor was medium; he found that the job of companion was light (*see* Doc. 17 at 12; Tr. 18, 322–23).  The ALJ did not err in characterizing the companion job as light.  First, the VE testified that such a job was light (*see* Tr. 322–23), and Plaintiff's own description of the work is compatible with the definition of light work.[11]  Thus, the ALJ properly concluded that Plaintiff's work as a companion was "past relevant work" and that Plaintiff could return to that work.

Regarding the job of cashier, Plaintiff does not dispute that it was light and that it was "past relevant work"; rather, Plaintiff contends that "the ALJ's finding that [Plaintiff] can perform her past relevant work as a cashier is contradicted by the evidence of record" (Doc. 17 at 13).  In particular, Plaintiff asserts that the ALJ failed to incorporate Plaintiff's severe impairments into his RFC determination, and had he done so, he would have concluded that Plaintiff was unable to perform the job of cashier.

Residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments.  *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite her limitations.  "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Although the RFC determination is a medical question, it is not based only on "medical" evidence, such as evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess RFC on the basis of all the relevant, credible evidence of record.  *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the

---

[11]Light work is defined in 20 C.F.R. § 404.1567(b) as:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding). *See also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p.  Additionally, in determining whether an individual is capable of returning to past work, the ALJ should specifically set forth Plaintiff's limitations and determine how those limitations affect her RFC. *See* Ingram v. Chater, 107 F.3d 598, 604 (8th Cir. 1997).  The ALJ should also make "explicit findings" regarding the physical and mental demands of the past work, and compare those demands with Plaintiff's RFC to determine whether she could perform the relevant duties. *See* Ingram, 107 F.3d at 604; *see also* Social Security Ruling 82-61 (stating that under section 404.1520(e), a claimant will be found "not disabled" when it is determined that she retains the RFC to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy).

Here, the ALJ found that Plaintiff had the severe impairments of foot pain, numbness in her left hand, hip pain, and migraine headaches (Tr. 20), and he determined that Plaintiff's RFC was light, specifically noting that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, and she could walk, stand, or sit six hours in an eight-hour day (Tr. 18, 20).  In determining Plaintiff's RFC, the ALJ relied heavily upon the opinion of Plaintiff's treating physician, Dr. Giraldo, regarding Plaintiff's physical capacities (*see* Tr. 17).  He also gave significant weight to the opinions of consultative examiner Dr. Faruqui, who opined that Plaintiff had no limitations in the joints of her right ankle and heel, no wrist restrictions or limitations, and no limitations in her ability to finely manipulate, push, pull, or grasp with her hands (*id.*).  Additionally, the ALJ assigned little weight to  the opinion of a state agency consultant who opined that Plaintiff was capable of performing medium work, finding that the opinion was inconsistent with the medical evidence of record (*id.*).    Thus, the ALJ's RFC findings have substantial support in the record, and this court would find no error in the ALJ's RFC determination, but for the ALJ's additional findings that Plaintiff suffered from the severe impairments of left hand numbness and migraines.  The RFC is

incomplete because it fails to include any specific limitations relating to those severe impairments (if the ALJ concluded that they imposed no limitations, he failed to so state or explain why they would impose no restrictions).  Moreover, the ALJ erred in failing to consider the explicit demands of Plaintiff's past work as a cashier and in failing to compare those demands with Plaintiff's RFC. Thus, the ALJ erred in finding that Plaintiff could return to the job as cashier.

In conclusion, the ALJ erred in finding that Plaintiff could return to her past work as a presser, janitor, or cashier.  Although the court has concluded that the ALJ did not err in finding that Plaintiff could return to her past work as a companion, for the reasons set forth more fully below, the undersigned recommends that this case be remanded nonetheless.

B.    Use of the Medical-Vocational Rules

Although the ALJ concluded at step four that Plaintiff could return to her past relevant work, he made an alternate finding at step five; namely, that even if Plaintiff could <u>not</u> return to her past relevant work, she was capable of performing other jobs available in the national economy.  In making an alternate finding at step five, the ALJ stated that Plaintiff's "capacity for light work is substantially intact and has not been compromised by any nonexertional limitations."  In reaching this conclusion and in finding that Plaintiff was not disabled at step five, the ALJ relied upon Medical-Vocational Rule 202.14 (Tr. 18, 20).  Plaintiff alleges that the ALJ erred because Rule 202.14 is for individuals aged 50 to 54, but Plaintiff was 56 (an "advanced age") when she applied for benefits, 59 when she appeared before the ALJ for her hearing, and 60 when the decision of the ALJ was rendered.  Thus, the ALJ should have relied upon Rule 202.06, which applies to individuals aged 55 to 60.

The Commissioner concedes that the ALJ applied the incorrect age category (*see* Doc. 18 at 7), but urges this court to affirm its decision nonetheless because the ALJ's finding at step four was proper.  In support, the Commissioner states: "[I]f the record could support two inconsistent positions and one position corresponds with the Commissioner's findings, the Court must affirm the Commissioner's denial"[12] (Doc. 18 at 3).

---

[12]Notably, Defendant appears to concede that the ALJ erred in his analysis regarding the job of <u>companion</u>, but argues that the ALJ did not err in his finding regarding the job of <u>cashier</u> (the opposite of what the undersigned has concluded), further demonstrating the lack of clarity in the opinion of the ALJ.  *See* Doc. 18 at 6.

After carefully considering the position of each party and the unique circumstances of this case, the undersigned concludes that the Commissioner's decision should not be affirmed.  It is clear that the ALJ's ultimate finding that Plaintiff is not disabled was based upon his erroneous belief that Plaintiff could return to <u>four</u> different jobs in her past <u>or</u> perform other work presently available in the economy.  However, this court has concluded that Plaintiff could return to only <u>one</u> job.  Upon remand, the ALJ should consider all of Plaintiff's "severe" impairments in determining Plaintiff's RFC, unless those impairments impose no restrictions on Plaintiff's ability to perform work.  If they impose no restrictions, the ALJ should so state and should provide an explanation (for example, it is difficult to understand how "left-hand numbness" could have no effect on Plaintiff's ability to perform the job of cashier or how migraine headaches could have no effect whatsoever on Plaintiff's ability to work).  Moreover, if the ALJ again concludes that Plaintiff can return to her past work as a cashier, the ALJ should compare the explicit demands of that job with Plaintiff's RFC.  Finally, should the ALJ again reach step five in the analysis of Plaintiff's claim, the proper Medical-Vocational Rule should be applied.

        C.        Finding Regarding Plaintiff's Non-Exertional Limitations

Plaintiff again asserts that the ALJ erred in determining her RFC because he failed to incorporate all of Plaintiff's "severe" impairments in the RFC determination, specifically noting the lack of any restrictions related to Plaintiff's migraine headaches and left-hand numbness.  The error is compounded, Plaintiff asserts, because the ALJ failed to specifically discredit Plaintiff's statements regarding the effects of the numbness and the headaches (for example, Plaintiff alleged that the headaches caused nausea and vomiting and occurred on a daily basis during the months leading up to her hearing).  Despite failing to discredit these allegations (on the contrary, the ALJ found the numbness and headaches to be severe impairments), the ALJ did not ask the VE to consider any limitations related to those conditions and did not consider them in concluding that Plaintiff could return to her past relevant work.  Thus, the ALJ further erred in his analysis at step four.

        D.        Credibility Determination

Finally, Plaintiff asserts that the ALJ's credibility determination was flawed because he only cited evidence in support of his determination and failed to mention evidence that contradicted his

findings.  Moreover, Plaintiff argues, some of the ALJ's reasons for finding Plaintiff less than fully credible are refuted by the record.

In finding Plaintiff "not totally credible," the ALJ noted that no physician had opined that Plaintiff is disabled (Tr. 18, 20).  This finding is supported by the record, as no consulting, examining, or treating physician found Plaintiff to be disabled.  Indeed, Plaintiff's treating physician, Dr. Giraldo, saw Plaintiff over a number of years and then rendered an opinion that Plaintiff was capable of performing full-time work.  As a treating physician, his opinion is entitled to substantial weight unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Commissioner of Social Security,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  Although Dr. Giraldo acknowledged that he rendered his opinion that Plaintiff was "not disabled" without first seeing the records from the Feitz Foot Clinic, the record establishes that he had abundant knowledge of Plaintiff's foot condition before rendering his opinion (*see* footnote seven, *supra*).  Even so, Dr. Feitz saw Plaintiff on only two occasions, provided only conservative treatment (that is, medication and a Cortisone shot), and released Plaintiff from any further treatment (*see* Tr. 209).  It is unlikely that his one-page record (Tr. 209) would have changed Dr. Giraldo's opinion.

Plaintiff also argues that the "ALJ noted that Dr. Faruqui found no limitation of range of motion, but failed to mention that another physician found limitation of range of motion (*compare* Tr. 18 *with* Tr. 165)."  Plaintiff is referring to a notation made by Dr. Giraldo on October 1, 2001, indicating that "[patient] has decreased ROMs on the [left] hip" (Tr. 165).  However, Dr. Giraldo subsequently opined that Plaintiff was capable of performing full-time work with no limitations.  Moreover, Dr. Faruqui examined Plaintiff in November 2001 (Tr. 160), after Dr. Giraldo's observation was made, and after Dr. Giraldo prescribed Vicoprofen[13] for Plaintiff's pain (*see* Tr. 165).  Thus, it appears that the Vicoprofen controlled Plaintiff's pain and permitted a full range of

---

[13]Vicoprofen is a combination of an opioid analgesic (pain reliever related to narcotics, hydrocodone) and a nonsteroidal anti-inflammatory drug (ibuprofen).  Both medications are effective against pain.  It is estimated that one tablet of Vicoprofen is as effective as two tablets of Tylenol #3.  *See* www.medicinenet.com/hydrocodone_and_ibuprofen/article.htm (Last visited December 29, 2006).

motion.[14]  Notably, at Plaintiff's next visit with Dr. Giraldo, on November 5, 2001, she made no mention of any hip pain, and her Vicoprofen was continued (*see* Tr. 164).  Additionally, she cancelled an appointment in early December 2001 because "she [did]n't need to come" (Tr. 164). Accordingly, the ALJ did not err in failing to mention Dr. Giraldo's October 2001 notation.

In further discounting Plaintiff's complaints, the ALJ referred to the "amount of medical care" Plaintiff received (Tr. 18).  This finding may or may not be supported by the record — depending on what the ALJ meant.  To the extent the ALJ was referring to the fact that Plaintiff needed only conservative care to treat her impairments, the ALJ did not err.  However, to the extent the ALJ faulted Plaintiff for not obtaining further care that she could not afford, the ALJ erred.  *See* Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) (although refusal to follow prescribed treatment may preclude finding of disability, a claimant's inability to pay for such treatment excuses such failure); *see also* Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995).  The record contains numerous indications that Plaintiff could not afford additional medical care (*see, e.g.*, Tr. 88, 123, 134, 160, 165, 229, 312).  Additionally, the record reflects that Plaintiff's medications are provided to her through the county, which supports her assertion that she cannot receive medical care unless it is provided for free.  Thus, upon remand, the ALJ should clarify his statement regarding Plaintiff's "lack of medical care."

The ALJ further found that "no physician has indicated she needed surgery or injections" (Tr. 18). This statement is not supported by the record.  Plaintiff was sent to vocational rehabilitation for "possible injections [versus] surgical repair" (Tr. 258).  Additionally, Plaintiff received injections for her foot pain (Tr. 209).

Finally, the ALJ found that Plaintiff's activities of daily living were inconsistent with her allegations of disability or an inability to perform light work (Tr. 18).  At steps four and five of the evaluation process it is appropriate for the ALJ to consider a plaintiff's daily activities.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).  If daily activities are to be considered, however, the Administrative Law Judge must do so in the context of all of the evidence in the record:

---

[14]"A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted).

> We have consistently held that in ascertaining whether the [Commissioner's] findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Commissioner]."

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).

The Parker court found the ALJ's reliance upon plaintiff's "daily activities" to discount her testimony as to pain to have been flawed for failure to consider the plaintiff's testimony that she had to lie down after two hours of such work. *Id.* Similarly, in Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995), the court held that a conclusory citation to a plaintiff's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing. And in Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the court held that participation in "everyday activities of short duration, such as housework or fishing," does not disqualify a plaintiff from disability, so long as such activities are not inconsistent with limitations recommended by the treating physicians.

In the instant case, the ALJ cited evidence from a "report of contact" form dated October 15, 2001, which was completed by an agency employee after speaking with Plaintiff on the phone (*see* Tr. 18, 105). The form reflects Plaintiff's statement that "she is able to complete all of her [activities of daily living]. She can cook, clean, drive, do laundry, wash dishes or whatever else she needs to do" (Tr. 105) (emphasis added). Although Plaintiff suggests that this statement is not credible because it was recorded by an agency employee, as opposed to being Plaintiff's "own submission" (*see* Doc. 17 at 18), Plaintiff's argument is unpersuasive. On one of Plaintiff's own submissions, also from October 2001, she indicated that the following daily activities were not affected by her pain: cooking/meal preparation, personal care (bathing, hair care, dressing), housecleaning, laundry, and shopping (Tr. 125–26). Plaintiff did state that her ability to drive was somewhat limited, but only as follows: "if sitting in car very long [sic], hard for me to get up and get going on my leg" (Tr. 126). Similarly, Plaintiff reported on another form that she was able to cook daily, do laundry every other day, and clean and shop weekly (Tr. 94). Although Plaintiff testified during her hearing that she sometimes has to sit down while she cleans her mother's house or that she sometimes cannot complete all cleaning chores in one day (*see* Tr. 310, 318), she did not indicate that her ability to

perform daily activities was significantly limited, and the ALJ did not err in his consideration of Plaintiff's daily activities.

In sum, some of the ALJ's reasons for discounting Plaintiff's complaints were proper and supported by the record, and others were erroneous.  Thus, the ALJ should be directed to make a new credibility determination upon remand.  Should the ALJ again decide that Plaintiff's complaints are not fully credible, the reasons for that decision should be proper and have substantial support in the record.

VI.   CONCLUSION

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts.  Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir. 1991).  A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216–17 (11th Cir. 1991) (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").

In the instant case, this court cannot conclude that the cumulative effect of the evidence establishes disability without a doubt.  Thus, a remand is appropriate for additional proceedings.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, that judgment be

entered in favor of the Plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), and that the clerk be directed to close the file.

    At Pensacola, Florida this 5th day of January 2007.


                           */s/ Elizabeth M. Timothy*             
                           **ELIZABETH M. TIMOTHY**
                           **UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

      **Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts,</u> 858 F.2d 698, 701 (11th Cir. 1988).**